**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:14-CV-00169-FDW**

| | | |
|---|---|---|
| **KAREN L. HART,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **ORDER** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **ACTING COMMISIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on Plaintiff Karen L. Hart's Motion for Summary Judgment, (Doc. No. 12), and Defendant Acting Commissioner of Social Security Carolyn W. Colvin's Motion for Summary Judgment. (Doc. No. 14). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits.

Having reviewed and considered the written arguments, administrative record, and applicable authority, for the reasons set forth below, Plaintiff's Motion for Summary Judgment is DENIED, Defendant's Motion for Summary judgment is GRANTED, and the Administrative Law Judge's ("ALJ") decision is AFFIRMED.

## I.     BACKGROUND

Plaintiff has a history of posttraumatic stress disorder ("PTSD"), depression, anxiety, panic attacks, sciatica, and obesity, all of which have been present since the alleged onset date of April 1, 2010. Plaintiff received outpatient and inpatient treatment at Carolinas Medical Center from January 2010 to February 2010, and from October 8, 2010, to October 12, 2010, which

resulted in a final diagnosis of a substance-induced mood disorder, crack cocaine abuse, depressive disorder, and specific phobia. Plaintiff also reported a history of back problems due to sciatica, for which she was prescribed medications in August 2011. Several times from 2011-2012, doctors noted that Plaintiff was obese. From 2010-2012, Plaintiff's symptoms generally improved after Plaintiff took her medications regularly and remained sober, however, when she was off her medication she presented with suicidal thoughts and hallucinations.

Plaintiff filed an application for a period of disability and disability insurance benefits on October 13, 2010, for an alleged disability beginning on April 1, 2010. Plaintiff's application was denied initially and denied again upon reconsideration. The ALJ held a hearing on July 23, 2012, and determined that Plaintiff was not disabled within the meaning of the Act on December 7, 2012. Plaintiff timely filed a request for review of the ALJ's decision, which the Appeals Council denied on February 11, 2014. Plaintiff filed this civil action, seeking a review of the Commissioner's final decision.

## II.    STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g), limits this Court's review of the Commissioner's final decision to whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). This Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). Thus, this Court "'must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard.'" Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting Mastro v. Apfel,

270 F.3d 171, 176 (4th Cir. 2001).).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit has defined "substantial evidence" as:

> Substantial evidence has been defined as "more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . .").

The Fourth Circuit has long emphasized that a reviewing court does not weigh the evidence again, nor substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the Commissioner's final decision, the decision should be affirmed. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982). The ALJ, and not the Court, has the ultimate responsibility for weighing the evidence and resolving any conflicts. Hays, 907 F.2d at 1456.

### III.    ANALYSIS

The question before the ALJ was whether Plaintiff was "disabled" under the Social Security Act between April 1, 2010, and the date of his decision.[1] Plaintiff bears the burden of

---

[1] "Disability" is defined under the Social Security Act, 42 U.S.C. § 301, et seq., as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

proof to establish he was disabled within the meaning of the Social Security Act in order to be entitled to benefits. Bowen v. Yuckert, 482 U.S. 137, 146 (1987).

Under the Social Security Act, there is a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a)(1). First, Plaintiff must show that she is not engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, Plaintiff must show that she had an impairment or a combination of impairments, and that the impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). Plaintiff must have suffered from these impairments for more than twelve months to receive benefits. Id. Third, if Plaintiff can show that her severe impairments meet or medically equals one the listings in 20 C.F.R. § 404, subpart P, appendix 1, then Plaintiff is automatically considered to be disabled. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, Plaintiff must show that she does not have the residual functional capacity ("RFC") to perform the requirements of his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iii). Finally, if Plaintiff meets those four elements, it becomes the Commissioner's burden of proof to establish whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i-v).

On December 7, 2012, the ALJ found that Plaintiff was not disabled at any time between April 1, 2010, and the date of his decision. In applying the five-step process, the ALJ first determined that Plaintiff's work did not rise to the level of substantial gainful activity. The ALJ then found that Plaintiff had severe impairments, which include: posttraumatic stress disorder, depression, anxiety, panic attacks, sciatica, and obesity. At step three, the ALJ determined that none of Plaintiff's impairments met or were medically equivalent to any of the listings in 20 C.F.R. § 404, subpart P, appendix 1. The ALJ calculated Plaintiff's RFC to determine whether

---

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

Plaintiff could perform the requirements of her past work. The ALJ found that Plaintiff's RFC made her capable of only performing "simple, routine, and repetitive tasks in a stable work environment at a nonproduction pace." (Doc. No. 10-3, p. 27). The ALJ further determined that Plaintiff had the RFC to perform work at all exertional levels, with the exception of occasional ladder climbing. With regard to the fourth step, the ALJ found that Plaintiff could perform her past relevant work as a garment sorter. Lastly, in considering step five, the ALJ found that Plaintiff was capable of performing work that existed in significant numbers in the national economy.

On appeal, Plaintiff makes the following assignments of error: (1) the ALJ's decision does not mention or explain why the Commissioner did not find Plaintiff disabled when Medicaid found her disabled, in violation of 20 C.F.R. § 416.912(b)(5), SSR 06-03p, and POMS DI 24515.008H; (2) the ALJ failed to include any limitations caused by sciatica in the RFC finding, in violation of SSR 96-3p; (3) the ALJ failed to inquire into Plaintiff's nonexertional capacity in terms of work-related functions, in violation of SSR 96-8p; and (4) the ALJ failed to evaluate the weight of the Global Assessment of Functioning ("GAF") scores in the record. For the foregoing reasons, these arguments fail.

### A. PLAINTIFF'S MEDICAID DETERMINATION

Plaintiff argues that the ALJ did not properly follow SSR 06-03p, 2006 WL 2329939, because such the ruling directs that the North Carolina Department of Health and Human Services Medicaid disability determination cannot be ignored and must be considered.

The ALJ stated that, per SSR 06-03p, the ALJ is not bound by disability decisions by other governmental and nongovernmental agencies, and hence, was not bound by Plaintiff's Medicaid disability decision. See 20 C.F.R. §§ 404.1527(e) and 416.927(e). "A statement by a

medical source that [Plaintiff is] 'disabled' or 'unable to work' does not mean that [the ALJ] will determine that [Plaintiff is] disabled." 20 C.F.R. § 404.1527(d)(1). However, the ALJ must explain the consideration given to other governmental or nongovernmental disability decisions in his decision. 20 C.F.R. §§ 404.1504, 416.904. Plaintiff argues that the ALJ did not consider Plaintiff's Medicaid disability decision, so the decision must be reversed and remanded for further explanation. To the contrary, the ALJ considered this decision, as supported by substantial evidence.

The ALJ expressly stated that he considered the opinion of the State of North Carolina Department of Health and Human Services ("DHHS"), as stated in SSR 06-03p; however, the ALJ gave the opinion little weight. (Doc. No. 10-3, p. 31). The ALJ stated that he afforded little weight to the opinion because it was not consistent with the record as a whole. The ALJ specifically noted that the opinion was inconsistent with the physical examination findings of Dr. Hillman and the treatment notes of Dr. Castro. (Doc. No. 10-3, p. 31). In fact, the physical examination findings made by DHHS stated that Plaintiff had no severe physical impairments, to which the ALJ disagreed, despite ultimately determining that Plaintiff is not disabled under the Act. Furthermore, the findings of Dr. Hillman and Dr. Castro support an overall view that when Plaintiff took her medication and refrained from illicit substance use, her mental health symptoms showed significant improvement, a finding inconsistent with the Medicaid disability decision.

After review of the ALJ's decision, the Court finds that substantial evidence supports the ALJ's treatment of the opinion of the State of North Carolina Department of Health and Human Services when assessing whether Plaintiff is disabled under the Act.

**B. INCLUSION OF PLAINTIFF'S LIMITATIONS FROM SCIATICA IN THE RESIDUAL FUNCTIONAL CAPACITY FINDING**

Plaintiff contends that the ALJ's decision should be reversed because the ALJ determined that Plaintiff's sciatica was a severe impairment at step two, but failed to consider limitations related to the sciatica, in violation of SSR 96-3p. Contrary to Plaintiff's argument, the ALJ properly considered Plaintiff's limitations resulting from sciatica. SSR 96-3p states:

> [A] determination whether an impairment(s) is severe requires an assessment of the functionally limiting effects of an impairment(s), symptom-related limitations and restrictions must be considered at this step of the sequential evaluation process. . . . If the adjudicator finds that such symptoms cause a limitation or restriction having *more than a minimal effect on an individual's ability to do basic work activities*, the adjudicator must find that the impairment(s) is severe and proceed to the next step in the process even if the objective medical evidence would not in itself establish that the impairment(s) is severe.

SSR 96-3P (S.S.A. July 2, 1996) (emphasis added).

Here, substantial evidence supports the ALJ's decision that, while Plaintiff's sciatica is a severe impairment, no symptoms resulting from the sciatica caused a limitation or restriction having more than a minimal effect on Plaintiff's ability to perform basic work activities. The ALJ considered potential limitations as a result of sciatica but did not find any limitations related to sciatica that would preclude work activity within her residual functional capacity assessment. In support of the finding that Plaintiff's sciatica did not prevent her from performing routine and repetitive tasks in a nonproduction work environment, the ALJ considered evidence from multiple physicians indicating that Plaintiff: was "cooperative with appropriate mood and effect"; had "normal back range of motion"; had normal sensory and motor examinations; had "normal coordination"; showed "no joint swelling or deformity of her extremities"; was in no overt distress; "was able to ambulate without difficulty"; could perform dexterous activities; had "no postural limitations; and had "normal vision, hearing, and grasping abilities." (Doc. No. 10-3, pp. 29-30). Notably, no physical limitations due to sciatica had been assessed by any of

Plaintiff's doctors.

The ALJ considered Dr. Oriaku's treatment notes, which show that because of Plaintiff's obesity and sciatica, Plaintiff sometimes experienced tenderness to palpation of her thoracic and lumbar spine upon physical examination. (Doc. No. 10-3, p. 29). However, during this time Plaintiff was not taking pain medication. The ALJ determined that due to the pain and slight physical discomfort caused by sciatica and obesity, substantial evidence supports a limitation of occasional climbing of ladders. While the evidence showed slight abnormalities that had more than a minimal effect on Plaintiff's ability to perform basic work activities due to sciatica, the ALJ nonetheless found that Plaintiff "is able to perform simple, routine, and repetitive tasks in a nonproduction work environment." (Doc. No. 10-3, p. 27).

Therefore, Plaintiff's contention that the ALJ failed to consider limitations resulting from sciatica has no merit, and a remand to consider whether Plaintiff has such limitations is not appropriate.

## C.  RESIDUAL FUNCTIONAL CAPACITY

Plaintiff next contends that the ALJ made several errors with regard to her RFC determination. Plaintiff argues that the ALJ erred because at steps two and three of the five-step analysis, in considering the "paragraph B" criteria, the ALJ assessed that Plaintiff had moderate difficulties in social functioning, but her RFC did not contain any social limitations. However, limitations identified in "paragraph B" are "not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, available at 1996 WL 374184, at *4. Thus, Plaintiff's contention that the ALJ failed to assess Plaintiff's moderate difficulties in social functioning in the residual functional capacity has no merit.

Plaintiff further contends that the ALJ failed to properly conduct a function-by-function analysis of the Plaintiff's RFC.  An ALJ is solely responsible for assessing Plaintiff's RFC.  20 C.F.R. §§ 404.1546(c), 416.946(c).  In making that assessment, he must consider the functional limitations resulting from Plaintiff's medically determinable impairments.  SSR 96–8p, available at 1996 WL 374184, at *2.  Plaintiff has the burden, however, of establishing her RFC by demonstrating how her impairment impacts her functioning.  See 20 C.F.R. §§ 404.1512(c), 416.912(c).

Here, the ALJ's determination of Plaintiff's RFC is supported by substantial evidence, and, as such, will not be disturbed.  The ALJ assessed Plaintiff's RFC as being able to perform "a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to climb ladders occasionally."  (Doc. No. 10-3, p. 27).  The ALJ then extensively reviewed all of the factors that went into the determination.  Id.  The ALJ reviewed all Plaintiff's pertinent complaints as they related to her severe impairments and determined that Plaintiff could "perform simple, routine, and repetitive tasks in a stable work environment at a nonproduction pace."  Id.  To make this determination, the ALJ reviewed all of the sources of medical information and weighed them accordingly.

In assessing whether there should be social limitations on Plaintiff's RFC, the ALJ noted that in several medical opinions, Plaintiff was described as cooperative with the appropriate mood and affect.  Furthermore, State agency psychological consultants who evaluated Plaintiff found that Plaintiff could perform simple, repetitive, routine tasks in a low stress, nonproduction work environment, which mirrors the ALJ's overall RFC finding.  Such an opinion from an acceptable medical source constitutes substantial evidence to support the ALJ's RFC assessment.  See 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2).

Finally, Plaintiff argues that the "generic finding" that she is limited to "simple, routine, and repetitive tasks in a stable work environment at a nonproduction pace" is insufficient under SSR 96-3p because the RFC determination requires a more detailed assessment. However, the court has held on numerous occasions that limiting a claimant to "simple, routine, repetitive" tasks is an appropriate RFC determination. See Chavis v. Shalala, No. 93-1915, 1994 WL 319163 (4th Cir. 1994) (affirming Commissioner's decision that included an RFC for "simple, routine, repetitive tasks in a low stress environment"); Segers v Shalala, No. 94-1518, 1994 WL 665390 (4th Cir. 1994) (affirming Commissioner's decision that included an RFC for "simple, routine, repetitive work"); Williams v. Colvin, No. 3:13-CV-174-RJC-DSC, 2014 WL 117228 (W.D.N.C. 2014) (affirming Commissioner's decision that included an RFC for "simple, routine, repetitive light work").

Substantial evidence supports the ALJ's determination of the RFC. Further, the ALJ properly reviewed all of the relevant information, including whether there should be social limitations included in Plaintiff's RFC.

**D. PLAINTIFF'S GAF SCORES**

Plaintiff contends that the ALJ only considered a few of the Plaintiff's global assessment functioning ("GAF") scores, and failed to mention most of the much lower scores or evaluate the amount of weight the scores should be given. Plaintiff argues that because of the ALJ's error in failing to properly consider the GAF scores, this matter must be remanded.

In analyzing opinion evidence, the ALJ must evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c). However, the ALJ does not need to comment on every piece of evidence in the record, and their failure to cite a specific piece of evidence is not an indication that the evidence was not considered. Johnson v. Astrue, No. 4:06-CV-0274, 2008 WL 704321,

at *6 (E.D.N.C. 2008). Even the failure to reference a GAF score is not, standing alone, a sufficient ground to reverse a disability determination. Mitchell v. Astrue, No. 2:11-cv-00056-MR, 2013 WL 678068, at *23 (W.D.N.C. 2013).

Here, contrary to Plaintiff's contention that the ALJ failed to consider all the GAF scores, the ALJ did in fact consider and evaluate all of the thirteen GAF scores in the record. The ALJ explicitly stated that he gave great weight to the three GAF scores provided by Dr. Castro because they were consistent with the evidence of Plaintiff's mental health findings when she was taking medication and refraining from illicit substance use. (Doc. No. 10-3, p. 30). The ALJ further stated that he gave "little weight to the [nine] GAF assessments in the records from Carolinas Medical Center indicating no better than serious symptoms or any serious impairment in social, occupational, or school functioning." Id. Lastly, the ALJ specifically noted that he also gave "little weight to the assessments of consultative examiner Ms. Neal and Dr. Cantley, such as that the claimant had a GAF score of 45, which indicates serious symptoms or any serious impairment in social, occupational, or school functioning." Id. The GAF score given by Ms. Neal and Dr. Cantley was the last of the thirteen GAF scores in the record. As evidenced by the ALJ's opinion, he evaluated and gave weight to each of the GAF scores contained in the record. Therefore, Plaintiff's contention that the ALJ failed to evaluate and weigh the GAF scores is without merit.

In sum, the Court is satisfied that substantial evidence supports the ALJ's decision.

### IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment, (Doc. No. 13), is DENIED; Defendant's Motion for Summary Judgment, (Doc. No. 11), is GRANTED; and the Commissioner's decision is AFFIRMED. The Clerk's Office is directed to CLOSE THE CASE.

**IT IS SO ORDERED.**

Signed: January 28, 2015

Frank D. Whitney
Chief United States District Judge